# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Case No. 1:04mj00183 |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| MICHAEL WADE MARTIN, ) | BY: PAMELA MEADE SARGENT |
| ) | United States Magistrate Judge |
| Defendant ) | |

This matter is before the court on the motion of A. F. Beeler, Warden, Federal Medical Center, Butner, North Carolina, ("FMC Butner"), to allow the forcible medication of the defendant, Michael Wade Martin, ("Martin"), in an attempt to restore him to competency to stand trial in this matter. Based on the reasoning set forth below, the motion will be granted.

*I.*

The facts and circumstances of Martin's arrest are taken from information provided to and relayed by the evaluators who performed Martin's most recent psychiatric evaluation. According to this information, Martin was arrested in Washington, D.C., on or about June 7, 2004, after he approached law enforcement officers on Constitution Avenue asking for directions to Seattle, Washington. Upon further questioning, Martin stated that he was former President Gerald R. Ford's adopted son, and he wanted to go to President Ford's residence to pick up some old

boxing tapes. Martin acknowledged having a gun and knife in his possession, at which time he was placed under arrest. The gun was confiscated and found to be loaded with seven rounds of ammunition. Oddly enough, without any further inquiry into Martin's mental status, Martin was released on bond.

On or about June 16, 2004, a grand jury of the Superior Court of the District of Columbia returned an Indictment against Martin charging him with violating District of Columbia Code Title 22, Section 4504(a) (carrying a handgun without a license), and Title 7 Sections 2502.01 (possession of an unregistered firearm) and 2506.01(3) (unlawful possession of ammunition). When Martin failed to appear for his arraignment on these charges a bench warrant was issued for his arrest on July 8, 2004.

Martin was arrested by the Marshals Service at his residence in Sugar Grove, Virginia, on October 8, 2004, and brought before the undersigned for an initial appearance. Based on the evidence before the court, the court acting sua sponte ordered that Martin be detained and transported to a federal medical facility for the purpose of a psychiatric or psychological evaluation to determine whether Martin was competent to stand trial on these charges.

This evaluation was subsequently performed and a report filed with the court. On December 28, 2004, the court found that Martin was not competent to stand trial and committed him to the custody of the Attorney General pursuant to 18 U.S.C. 4241(d)(1) to be hospitalized for treatment in a suitable mental health facility for a reasonable period of time, not to exceed four months, as was necessary to determine

whether there was a substantial probability that in the foreseeable future the defendant would attain the capacity to permit his trial to proceed.

This matter is now before the court on the motion of the warden of FMC Butner to allow the forcible medication of Martin in an attempt to restore him to competency to stand trial in this matter. A hearing was held before the undersigned on the motion on August 2, 2005. In support of the motion, the court has received and filed under seal a forensic evaluation prepared by Jill R. Grant, Psy.D., Staff Psychologist at FMC Butner, and Dr. Bruce Berger, M.D., Staff Psychiatrist at FMC Butner. Counsel for both the government and the defendant stated that they had no evidence other than this forensic report for the court to consider on the issue of whether the forcible medication of the defendant should be allowed.

According to the forensic report, Martin suffers from a delusional disorder, grandiose type, which does not render him dangerous in the controlled environment at FMC Butner, but which does render him incompetent to stand trial. According to the report, as a result of his psychotic illness, Martin has deeply ingrained delusions that involve his being a special agent for several presidents, having a close personal relationship with the current president, being a manager of several country music stars, having invented several medications and the hover jet and his working on an atomic bomb. While held at FMC Butner, Martin refused to take psychotropic medications prescribed in an effort to restore him to competency.

According to the report, Martin's psychosis is unlikely to improve, and Martin is substantially unlikely to gain the ability to understand the nature and consequences

of the proceedings against him or to assist properly in this defense without the use of antipsychotic medication. On the other hand, according to the report, treatment of Martin with antipsychotic medication would be likely to reduce the intensity of his psychotic symptoms and improve his mental status to a level where he would be competent to stand trial. In particular, the evaluators have recommended that treating Martin with the typical antipsychotic medication Prolixin would be medically appropriate. The evaluators have stated that the standard treatment of anyone with delusional disorder, grandiose type, would involve the prescription of antipsychotic medication, such as Prolixin. While it is possible that treatment with this antipsychotic medication could produce unwanted side effects, the report states that Martin would be carefully monitored for any sign of such side effects and, such side effects, if any, would be medically managed.

*II.*

The United States Supreme Court in *Sell v. United States*, 539 U.S. 166, 180 (2003), has held that a defendant who has been found incompetent to stand trial may be involuntarily medicated in an effort to restore competency only in "rare" circumstances. The Court in *Sell* recognized that it previously had held that a defendant has a constitutionally protected liberty interest in avoiding the involuntary administration of antipsychotic drugs. *See Sell,* 539 U.S. at 178 (citing *Riggins v. Nevada*, 504 U.S. 127, 134 (1992)). The Court noted that only an "essential" or "overriding" state interest could overcome this liberty interest. *See Sell,* 539 U.S. at 178-79 (quoting *Riggins*, 504 U.S. at 134). The Court held that:

- 4 -

> ... the Constitution permits the Government involuntarily to administer antipsychotic drugs to a mentally ill defendant facing serious criminal charges in order to render that defendant competent to stand trial, but only if the treatment is medically appropriate, is substantially unlikely to have side effects that may undermine the fairness of the trial, and, taking account of less intrusive alternatives, is necessary significantly to further important governmental trial-related interests. *Sell,* 539 U.S. at 179.

The Court in *Sell* set out four factors that must be established before a court can order that a defendant be involuntarily medicated to restore competency. *See Sell,* 539 U.S. at 180-82. First, the court must find that *important* governmental interests are at stake. *See Sell,* 539 U.S. at 180. Second, the court must find that involuntary medication will *significantly further* those important governmental interests in that the medication must be substantially likely to render the defendant competent and must be substantially unlikely to cause side effects that will interfere significantly with the defendant's ability to assist in his trial defense. *See Sell,* 539 U.S. at 181. Third, the court must find that involuntary medication is *necessary* to further those governmental interests in that alternative, less intrusive treatments are unlikely to restore competency. *See Sell,* 539 U.S. at 181. Fourth, the court must find that the administration of the medication is medically appropriate. *See Sell,* 539 U.S. at 181. The Court *in Sell* also held that before considering whether the government should be allowed to involuntarily medicate a defendant to restore competency, the court should consider whether involuntary medication was warranted for another purpose, such as when the defendant poses a danger to himself or others or when medication is necessary to treat a defendant who is gravely ill. *See Sell,* 539 U.S. at 181-82.

In this case, the government's experts opined that Martin did not pose a danger to himself or others while incarcerated and was not considered gravely ill. Therefore, I find that, at this time, no other grounds exist to support the involuntary medication of Martin other than for the sole purpose of establishing competency. That being the case, I must analyze the facts and circumstances of this case to determine whether each of the four factors set forth in *Sell* has been established. I begin this analysis by considering whether important governmental interests are at stake.

The Court in *Sell* recognized that the "Government's interest in bringing to trial an individual accused of a *serious* crime is important ... whether the offense is a serious crime against the person or a serious crime against property." *Sell,* 539 U.S. at 180 (emphasis added). The Court in *Sell* did not, however, offer any definition or explanation of what it considered to be a "serious" crime. Nevertheless, this court has previously held that, in light of the Supreme Court's Sixth Amendment precedent defining a serious offense as any offense for which the defendant may be sentenced to more than six months' imprisonment, the court's decision on this issue should be based on the seriousness of the penalties that may be imposed should the defendant be convicted of the charges he faces. *See United States v. Evans*, 293 F. Supp. 2d 668, 673-74 (W.D. Va. 2003). In this case, Martin is charged with at least one felony in that the charge of carrying a handgun without a license is punishable by a term of imprisonment of up to five years. *See* D.C. CODE ANN. § 22-4504 (2001). Thus, I find that the offense with which Martin is charged is a serious offense.

This finding, in and of itself, however, does not necessitate a finding that an important government interest is at stake. The Court in *Sell* listed factors other than

the seriousness of the offense for a court to consider in determining if an important government interest was a stake. In fact, the Court recognized that "[s]pecial circumstances" might lessen the importance of the government's interest in prosecution. *See Sell,* 539 U.S. at 180. In particular, the Court noted that the potential for future confinement would argue against the need for prosecution. *See Sell,* 539 U.S. at 180. More specifically, the Court recognized that a defendant's refusal to take medication voluntarily could lead to a lengthy confinement in a mental health institution, thereby diminishing the risks of releasing without punishment a person who has committed a serious crime. *See Sell,* 539 U.S. at 180. The Court also noted that the government's interest in prosecution would be lessened if a defendant already had been confined for a significant amount of time for which the defendant would receive credit toward any sentence ultimately imposed. *See Sell,* 539 U.S. at 180.

I do not, however, find that any of these factors apply in this case to diminish the important government interest at stake in pursuing the prosecution of Martin on these charges. I further find that involuntary administration of medication to Martin will significantly further those important governmental interests in that the medication is substantially likely to render Martin competent and is substantially unlikely to cause side effects that will interfere significantly with his ability to assist in his trial defense. I also find that involuntary medication is necessary to further those governmental interests in that alternative, less intrusive treatments are unlikely to restore Martin to competency. Finally, I find that the administration of the recommended medication is medically appropriate.

- 7 -

*III.*

Based on the above, I will grant Warden Beeler's motion to allow the forcible medication of Martin to restore him to competency for trial.

An appropriate order shall be entered.

ENTER: August 10, 2005.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE